UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EMMA JO TROWBRIDGE, | ) | NO. CV 10-08112 SS |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM DECISION AND ORDER** |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) | |
| Defendant. | ) | |

**I.**

**INTRODUCTION**

Emma Jo Trowbridge ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") partially denying her applications for Social Security Income benefits ("SSI") and Disability Insurance Benefits ("DIB"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Agency is AFFIRMED.

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for DIB on April 19, 2004 (Administrative Record ("AR") 160-69), and an application for SSI on April 20, 2004. (AR 135-38). She alleged a disability onset date of April 1, 2002, (AR 135), due to "[a]sthma, breathing problem[s], mass in left lung, migraine, lung disease [sarcoidosis]" (AR 161). The Agency initially denied this claim on February 17, 2005. (AR 108-09).

On April 20, 2005, Plaintiff requested reconsideration of her claim, which the Agency denied on August 18, 2005. (AR 106). Plaintiff then requested a hearing (AR 52), which was scheduled for October 17, 2006. However, Plaintiff failed to appear at the hearing. (AR 56). The Administrative Law Judge ("ALJ") declined to dismiss the hearing and instead continued it to August 6, 2007. (AR 58). Plaintiff appeared with counsel and testified. (AR 58, 64-94). On January 25, 2008, the ALJ issued a decision granting benefits starting on March 1, 2006, but found that the evidence did not support benefits prior to that date. (AR 30).

Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied her request on August 18, 2010. (AR 6-8). The ALJ's decision became the final decision of the Agency. Plaintiff then filed a complaint in this Court.

## III.

## FACTUAL BACKGROUND

Plaintiff was born on May 27, 1967. (AR 135). At the time of her hearing, Plaintiff was forty years old. (AR 58). Prior to her alleged disability onset date, Plaintiff worked as a "secretary" from 1999 and 2000 where she assisted the general manager and the vice president, typed, filed reports, and handled travel arrangements and other scheduling needs. (AR 66, 162). Plaintiff reported that she stopped working when "the pain [she] was feeling would not allow [her] to work." (AR 161). Plaintiff is a high school graduate and has some college education. (AR 65).

### A.  Plaintiff's Medical History

Plaintiff stated in her Disability Report that she sought treatment from Dr. Robert Thompson primarily for lung problems from April 2002 to August 2004. (AR 163). Dr. Thompson regularly prescribed Plaintiff Advair, Albuterol, and Theophylline for her respiratory issues. (See AR 300-05). In her Disability Report Appeal, Plaintiff reported visiting Dr. Joshua Levy with complaints of body pain and arthritis from August 2005 to October 11, 2005. (AR 173). Plaintiff stated that Dr. Levy prescribed her Tramadol, Tylenol Arthritis, and Darvon for her pain. (AR 175).

On August 19, 2002, a computerized tomograph ("CT") scan of Plaintiff's chest revealed a "1.4 cm spiculated left upper lung mass

3

with associated extensive left hilar and mediastinal adenopathy consistent with primary lung malignancy." (AR 235). Plaintiff was later hospitalized for breathing problems at Granada Hills Community Hospital in November 2002. (AR 164). Dr. Eswar Nyamathi took a biopsy from Plaintiff's left lung by on November 8, 2002. (AR 231). A second biopsy taken on April 18, 2003 by Dr. Nyamathi revealed features of sarcoidosis. (AR 205). A chest x-ray performed on April 16, 2003, along with a CT scan conducted on April 2, 2003 mirrored the findings of the biopsy. (AR 207, 209). The medical record indicates that Dr. Thompson first diagnosed Plaintiff with sarcoidosis on May 14, 2003. (AR 305).

Following Plaintiff's diagnosis with sarcoidosis, she made numerous visits to Granada Hills Community Hospital seeking treatment for various ailments and prescription refills. (AR 251-72). On May 5, 2003, an x-ray taken of Plaintiff's right foot after she complained of persistent foot pain revealed no significant issue. (AR 277). During another visit on September 26, 2003, Plaintiff complained of pelvic pain. (AR 275). An ultrasound revealed a "6 mm cyst area, with a slightly thickened wall adjacent to the right endometrium probably from a degenerated fibroid." (Id.)

Plaintiff commonly complained of debilitating headaches. (AR 251-55, 260-65). However, an MRI taken on May 24, 2004 showed "no evidence of mass, hemorrhage, or infarct. No abnormal enhancement." (AR 274). Another MRI, taken the same day, of the pituitary gland also returned negative for abnormalities. (AR 273).

4

Although Plaintiff complained of persistent neck pain, an MRI of her cervical spine taken on November 8, 2004 failed to reveal any severe abnormalities, other than mild central canal stenosis. (AR 247-48). However, on March 8, 2006, a new x-ray of Plaintiff's cervical spine revealed evidence of more severe issues including degenerative disc disease of the lower cervical spine and narrowing of disc space possibly related to disk bulging. (AR 337-41). On July 27, 2006, Dr. Andrew Seltzer performed a "cervical epidural injection" on Plaintiff to relieve pain associated with cervical disc disease. (AR 333).

**B.    Examining Sources**

   **1.    Psychiatric Evaluation**s

On July 10, 2006, medical student Jennifer Stevenson, performed the first psychiatric evaluation of Plaintiff. (AR 353-58). The assessment stated that Plaintiff had a GAF of 52. (AR 358). On September 28, 2006, Dr. Olayinka Kamson, a psychiatrist, opined that Plaintiff suffered from major depressive disorder and recurrent post traumatic stress disorder. (AR 359). The record does not include any psychiatric treatment records prior to July 10, 2006.

   **2.    Internal Medicine Evaluations**

On March 5, 2003, Dr. R.S. Vasan examined Plaintiff. (AR 192). Based on impressions from the examination, Dr. Vasan concluded that Plaintiff had clear lungs, and no irregularities in her chest, heart,

or head. (Id.). After reviewing x-rays of Plaintiff's chest, Dr. Vasan determined that Plaintiff had "[m]adiastinal and axillary lymphadenopathy," but was uncertain of the cause. (AR 193).

Dr. Douglas R. Gellerman examined Plaintiff on November 2, 2004, at the request of treating physician, Dr. Joey Brett, to determine the cause of Plaintiff's headaches. (AR 249). Dr. Gellerman concluded that Plaintiff had no abnormalities. (See id.).

Dr. Jagvinder Singh performed an Internal Medicine Consultation on December 21, 2004. (AR 317-21). Dr. Singh noted that Plaintiff had no problem with mobility, and that her "appearance, mood, gait and speech [were] normal." (AR 318). Additionally, Plaintiff's "lungs sound[ed] clear" despite her recorded history of asthma. (AR 321). According to Dr. Singh, Plaintiff could "stand and walk for about 6 hours," sit without complication, lift fifty pounds occasionally, and lift twenty-five pounds frequently. (Id.).

On January 31, 2005, Dr. Om P. Sharma reported findings based on an examination of Plaintiff. (AR 297). Dr. Sharma diagnosed Plaintiff with sarcoidosis of the lungs and spleen, and recurrent chest pain with fibromyalgia or chronic fatigue syndrome. (AR 298). However, Dr. Sharma asserted that Plaintiff did "not need any treatment at this time" with regard to her sarcoidosis. (Id.).

Dr. Singh reexamined Plaintiff on August 1, 2005. (AR 311). While Dr. Singh recognized Plaintiff's history of rheumatoid arthritis,

6

pulmonary fibrosis, sarcoidosis, and hypothyroidism, he could not find "any physical signs of any of the diseases." (AR 314-15). Further, he could not find "any limitation" either. (AR 315). Accordingly, he opined that Plaintiff could still "stand and walk for 6 hours," sit without restrictions, lift and carry twenty-five pounds frequently, and lift and carry fifty pounds occasionally. (Id.). Additionally, Dr. Singh asserted that Plaintiff had no postural limitations, but stated that Plaintiff should avoid exposure to fumes, dust, biological or chemical hazards. (Id.).

On June 12, 2006, at Dr. Brett's request, Dr. Jessica Bren Boston examined Plaintiff to determine the source of her neck pain and recommend a treatment program. (AR 335-38). Upon examination, Dr. Boston reported that Plaintiff had "significant pain with lateral flexion bilaterally at the cervical spine" as well as "increased low back pain with lumbar extension greater than flexion." (AR 337). After reviewing x-rays of Plaintiff's cervical spine, Dr. Boston concluded that Plaintiff had possible cervical disc bulging and degenerative disk disease of the lower cervical spine. (Id.). Additionally, after examining an x-ray of Plaintiff's lumbar spine, Dr. Boston concluded that Plaintiff had "[f]acet arthropathy at L4-L5 and L5-S1 bilaterally." (Id.).

**C.   Consultative Sources**

On February 17, 2005, Dr. Myung Sohn, completed a Physical Residual Functional Capacity Assessment of Plaintiff. (AR 324-31). The

7

assessment was based on Dr. Sohn's impression after reviewing Plaintiff's records. (See AR 324). Accordingly, Dr. Sohn opined that Plaintiff could occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, and be on her feet for "about 6 hours in an 8-hour workday." (AR 325). Further, Dr. Sohn asserted that Plaintiff did not have any push or pull limitations, nor any postural, manipulative, visual, or communicative limitations. (AR 325-28).

D.   **Vocational Expert's Testimony**

Barbara Miksic, a vocational expert, testified at Plaintiff's 2007 hearing. (AR 94-96). Ms. Miksic testified that a person who is "is physically able of lifting 50 pounds occasionally, and 25 pounds frequently, can stand and/or walk for 6 hours out of an 8-hour day, can sit for 6 hours in an 8-hour day, and frequently able to perform all six of the postural functions" would be able to perform Plaintiff's past relevant work. (AR 96).

F.   **Plaintiff's Testimony**

At the 2007 hearing, Plaintiff testified that she last worked as a secretary for an airplane manufacturing company. (AR 66). She confirmed that the maximum amount of weight she had to carry was "maybe 15 pounds," and that she was on her feet "less than four" hours a day. (AR 66-67). Plaintiff testified that, at the time of the hearing, she could carry up to a maximum of ten pounds, be on her feet for a total of thirty minutes in an eight-hour period, and sit continuously for an

hour in an eight-hour period. (AR 79-80). Moreover, Plaintiff claimed that she had trouble balancing because of back problems arising from pregnancy and other factors during the 1990s. (AR 83-84). Further, Plaintiff testified that she routinely leaves her house at least twice a day, five days a week, to take her son to and from school. (AR 93).

When the ALJ asked why Plaintiff was unable to work since January 2000, Plaintiff claimed that sarcoidosis and asthma limited her ability to breathe (AR 68-69), which further impacted her exertional capacity because she would become "dizzy, light-headed, and feel faint." (AR 69). Plaintiff also testified that during that time she could walk about half an hour in an eight-hour period, and had to change positions every twenty minutes while seated. (AR 70-71).

## IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 416.910.

9

of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing h[er] past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets her burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education and work experience. Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

## V.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was disabled beginning March 1, 2006 under the Social Security Act. (AR 21-31). At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 30, 2003. (AR 24). At step two, the ALJ found that Plaintiff had severe impairments, including "degenerative disc disease, fibromyalgia secondary to her chronic fatigue syndrome (possible but not established), and depression." (Id.). At step three, the ALJ found

11

that the severe impairments at step two did not meet or medically equal a listed impairment. (AR 25).

At step four, the ALJ split his analysis based on Plaintiff's residual functional capacity ("RFC") before and after March 1, 2006. (AR 26-30). Prior to March 1, 2006, the ALJ found that Plaintiff could perform medium work, including "standing and/or walking at least 6 hours in an 8 hour work day; sitting at least 6 hours in an 8 hour work day, using hands and feet for pushing and pulling arm and leg controls, and lifting 50 lbs. occasionally with frequent lifting of up to 25 lbs." (AR 26). The ALJ relied on the State Agency's and Dr. Singh's opinions of Plaintiff's RFC. (Id.). Further, the ALJ cited the fact that Dr. Singh "did not find any physical signs of any diseases" that Plaintiff asserted. (AR 25).

Moreover, the ALJ discounted Plaintiff's testimony about her capabilities prior to March 1, 2006, because "her medical history and the objective medical evidence offer no basis for drawing reasonable conclusions regarding the extent of her alleged symptoms." (AR 27). Specifically, the ALJ referred to MRI scans of Plaintiff's head and spine during that time, which failed to support Plaintiff's assertions. (See id.). Further, the ALJ noted that Plaintiff had no trouble living, dressing, grooming, bathing, cooking, doing laundry, or talking walks. (AR 28). The ALJ also highlighted that there is no evidence in Plaintiff's medical record supporting mental limitations prior to March 1, 2006. (Id.). Additionally, the ALJ pointed out that Plaintiff was

classified as a younger individual, thirty-six years old, on the alleged onset date of disability. (AR 29).

After determining Plaintiff's RFC, the ALJ determined that Plaintiff could have performed her past relevant work as a secretary prior to March 1, 2006. (AR 28). Specifically, he asserted, "her impairments were not so severe and frequent to prevent medium work with frequent postural limitations in climbing, balancing, stooping, kneeling, crouching, and crawling." (Id.). The ALJ relied partially on the vocational expert's opinion, which confirmed that a hypothetical person, similarly situated to Plaintiff, could perform secretarial duties. (AR 29).

However, after March 1, 2006, the ALJ determined that there was sufficient evidence in the record to support this finding. (Id.). The ALJ accredits this change to x-ray results from Plaintiff's lower back and neck, which revealed "disabling degenerative disc disease and disc bulge of the lower spine," as well as "facet arthropathy at L4-L5 and L5-S1 bilaterally." (Id.). Further, the ALJ gave weight to the findings of Plaintiff's mental evaluation on July 10, 2006, which showed that Plaintiff had major depressive disorder and recurrent and post-traumatic stress disorder. (AR 30). Accordingly, the ALJ found that Plaintiff could not perform her previous work experience after March 1, 2006, and that she was disabled as of that date. (Id.).

# VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

# VII.

## DISCUSSION

Plaintiff contends the ALJ erred in failing to provide clear and convincing reasons for rejecting Plaintiff's testimony concerning her

14

condition prior to March 1, 2006. (Memorandum in Support of Plaintiff's Complaint ("Complaint Memo.") at 2). The Court rejects Plaintiff's claim. For the reasons discussed below, the Court finds that the ALJ's decision should be AFFIRMED.

**<u>The ALJ Gave Clear and Convincing Reasons For Rejecting Plaintiff's Subjective Testimony Regarding Her Condition Before March 1, 2006</u>**

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective testimony concerning her condition prior to March 1, 2006. (Complaint Memo. at 2). The Court disagrees.

Whenever an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, as it is here, the ALJ must make explicit credibility findings. Rochin v. Barnhart, 204 F. App'x 601, 602 (9th Cir. 2006); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). Unless there is affirmative evidence showing that a claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007); Lester v. Chater, 81 F.3d 821, 834 (9th Cir 1995). As long as Plaintiff offers evidence of a medical impairment that could reasonably be expected to produce pain, the ALJ may not require the degree of pain to be corroborated by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc); Smolen, 80 F.3d at 1282.

15

The ALJ may, however, reject Plaintiff's testimony regarding the severity of her symptoms if he points to clear and convincing reasons for doing so. See Smolen, 80 F.3d at 1283-84. To determine whether Plaintiff's testimony regarding the severity of her symptoms is credible, the ALJ may consider, among other things, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284. If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ found that Plaintiff's "allegations of symptoms simply do not support an allegation that she [was] incapable of performing any work activity" prior to 2006. (AR 27). The ALJ noted that Plaintiff "had no problem in dressing, grooming and bathing herself. [Plaintiff] drives, does cooking, laundry, vacuuming, makes the bed, dishwashing, and takes a walk." (AR 28). The ALJ further noted that there were "no laboratory or clinical findings" or any "demonstrated medical pathology" documented in the record to support a more restrictive RFC. (Id.). Additionally, the ALJ found "nothing in the record to indicate that there were any limitations from a mental standpoint prior to March 1, 2006." (Id.). The ALJ concluded that while Plaintiff's "medically determinable impairment could reasonably

16

be expected to produce the alleged symptoms . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Id.

The ALJ's opinion is supported by substantial evidence in the record. Specifically, there is significant evidence showing Plaintiff exaggerated her pre-2006 symptoms. First, the ALJ properly discredited Plaintiff's complaints of disabling migraines by pointing to an MRI from March 24, 2004. (AR 27). The MRI revealed no evidence of "mass, hemorrhage or infarct." Id. Moreover, Dr. Gellerman failed to find abnormalities when he examined Plaintiff on November 2, 2004. (AR 18, 249). Although Plaintiff frequently complained of disabling headaches (AR 251-72), there are no records supporting her complaints.

Second, the ALJ correctly determined that the degree of Plaintiff's complaints pertaining to her cervical spine pain were not supported by the medical record prior to March 1, 2006. (AR 24). An MRI taken on November 8, 2004 of Plaintiff's cervical spine showed no severe abnormalities other than mild central canal stenosis. (AR 247-48). The medical records relating to Plaintiff's cervical spine remained unchanged until March 8, 2006.[2]

Third, the ALJ properly relied on the consultative doctors' assessments. (AR 27). While Plaintiff asserted that she could only

---

[2] The ALJ properly relied on a significant change in Plaintiff's diagnostic test results from an MRI taken on March 8, 2006, which revealed degenerative disc disease and disc bulging (AR 337-41), to award benefits after March 1, 2006. (AR 29).

17

carry a maximum of ten pounds and be on her feet for thirty minutes in an eight-hour period (AR 79-80), Dr. Singh found that she could carry up to fifty pounds occasionally, carry twenty-five pounds frequently, and be on her feet for six hours in an eight-hour period. (AR 318). Dr Singh's results were unchanged after reexamining Plaintiff the following year. (AR 315). Although Plaintiff complained of numerous disabling conditions, such as asthma and sarcoidosis, Dr. Singh could not find "any physical signs of any of the diseases," nor did he find any significant limitations. (Id.).

Further, Dr. Sohn's consultative assessment filed on February 17, 2005 supported Dr. Singh's finding that Plaintiff could perform medium work. (AR 325-28). The ALJ also correctly noted that "there was no demonstrated medical pathology documented anywhere in the record which would substantiate restricting the [RFC] greater." (AR 28). Therefore, the ALJ properly relied on the opinions of Dr. Singh and Dr. Sohn.

Fourth, the ALJ correctly noted that the record is devoid of any mental health treatment prior to 2006. (AR 28). The first indication that Plaintiff had a substantial mental health limitation came from an examination on July 10, 2006. (AR 353-58). While Plaintiff's attorney suggested that Plaintiff's mental health was an aggravating factor contributing to her disability (AR 90), there is no evidence in the record to show that Plaintiff's mental state was impaired prior to July 10, 2006. The Court agrees with the ALJ that "there was nothing in the record to indicate that there were any limitations from a mental standpoint prior to March 1, 2006." (AR 28).

18

Finally, the ALJ correctly noted that there was "not much objective medical evidence from her treating sources" to conclude that sarcoidosis, or any other impairment, was severe enough to deem Plaintiff disabled before 2006.  (See AR 28).  In addition to the medical opinions of Dr. Singh and Dr. Sohn, another examining physician, Dr. Sharma, also concluded that Plaintiff did not require any further treatment for sarcoidosis as of January 31, 2005. (AR 298).  Further the ALJ indicated that he was "very aware" of sarcoidosis, and knew that "some people can do more than others" while afflicted with the disease.  (AR 72).  However, nothing in the medical records show that Plaintiff's sarcoidosis prevented her from working prior to March 1, 2006.

Therefore, it was proper for the ALJ to reject Plaintiff's claims regarding her ability to work prior to March 2006.  The Court concludes that the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony concerning her condition prior to March 1, 2006.  Accordingly, no remand is required.

\\
\\
\\
\\
\\

## VIII.

## CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[3] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: September 21, 2011

                                         /S/
                                         SUZANNE H. SEGAL
                                         UNITED STATES MAGISTRATE JUDGE

**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**

---

[3] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."